**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| Gina Johnson, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GVG Capital, LLC,<br><br>Defendant. | CASE NO.: 4:25-cv-694<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**Nature of this Action**

1. Gina Johnson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against GVG Capital, LLC ("Defendant") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

**Parties**

4. Plaintiff is a natural person who at all relevant times resided in Anza, California.

5. Defendant is a Texas limited liability company who runs a real estate marketing and lead generation business headquartered in Flower Mound, Texas.

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 28 U.S.C. § 1331.

7. Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) as Defendant is based in this district and a significant portion of the events giving rise to this action occurred in this district.

8. In particular, Defendant directed its text messages to Plaintiff's telephone from this district.

**Factual Allegations**

9. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(951) 760-XXXX.

10. Plaintiff uses her cellular telephone as her personal residential telephone number.

11. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

12. Plaintiff registered her cellular telephone number with the DNC Registry on July 30, 2024, and has maintained that registration through the present date.

13. Beginning in January 2025 and continuing through the present, Plaintiff began receiving text messages and calls on her cellular telephone from several telephone numbers, touting interest in Plaintiff's real estate, the existence of "cash offers", and offering "property

reviews."

14. For example, Plaintiff received at least two text messages from short code 40626, as well as two text messages from telephone number (260) 544-9380:




15. Plaintiff did not recognize the sender of these text messages.

16. Plaintiff is not, and was not, interested in selling her home, or her land, or retaining any real estate professionals for a real estate transaction.

17. Plaintiff is not, and was not, interested in Defendant's services or marketing.

18. The "80k.us" URL, and the two "clcks.me" URLs each redirect to https://turbohomesale.org, a website that collects information from homeowners and directs

them " to a network which consists of real estate investors, real estate agents, and direct buyers."

19. The "trcks.me" URL—despite being from the same shortcode as the 80k.us URL, and being structurally similar to the "clcks.me" URLs—instead directs to another real estate-related website: https://allcashquote.com.

20. Neither website, however, discloses any actual entity responsible for the text messages at-issue, or the website itself, and instead obfuscates the ownership and identity of the websites.

21. However, the "Turbo Home Sale" website does provide a specific P.O. Box address in its Privacy Policy page—P.O. Box 660675 #31403 Dallas, TX 75266-0675—which is also used by other websites and business registrations associated with Defendant, and its owners, all of which operate within the real estate, insurance, and consumer finance arenas.[1]

22. Therefore, in light of the extensive association between Defendant, its owners and executives, and that specific P.O. Box, the text messages were sent by or for the benefit of Defendant, and the related websites are owned by Defendant.

23. If a consumer uses the "Turbo Home Sale" website and expresses interest in its service, they are ultimately directed to the following page:

---

[1] *See, e.g.*, *Eagle v. GVG Capital, LLC*, Case No. 4:22-cv-00638-SRB, ECF No. 19-2 at 3 (W.D. Mo.); http://consumermortgagedaily.com/contact.html (last visited July 1, 2025); https://fasteasysell.com/privacy.php (last visited July 1, 2025); https://www.sanabenefits.com/privacy-policy/ (last visited July 1, 2025); *see also* https://wyobiz.wyo.gov/business/FilingDetails.aspx?eFNum=170080059238205066090184133076110120046212062179 (last visited July 1, 2025) (Wyoming registration for a lead generation company operated by Damon Gochneaur, brother of Defendant's CEO/founder, Graham Gochneaur, using the same P.O. Box address).




24. The "Turbo Home Sale" website purports to have "assisted" 1,435,800+ homeowners in finding real estate investors, buyers, or agents.[2]

25. The list of "premier partners" is *long*, purporting to refer consumers to companies in fields ranging from real estate, mortgage lenders, banks, debt consolidation and servicing, and transactions involving structured settlements.[3]

26. Over 300 affiliate "partners" are listed on that website.

27. Therefore, upon information and belief, Defendant operates a telemarketing lead generator, whose sole purpose is to funnel consumers to a variety of different real estate and financial services companies, in exchange for payment of consideration to Defendant.

---

[2] https://turbohomesale.org/ (last visited July 1, 2025).

[3] https://turbohomesale.org/partners.html (last visited July 1, 2025).

28. In fact, Defendant makes this rather explicit through its job postings website, seeking an "affiliate manager" for managing referrals to affiliate companies, and noting that "GVG Capital is a hyper-growth real estate technology company, with a focus on customer acquisition for real estate professionals."[4]

29. Upon information and belief, Defendant accomplishes this task through many referral networks and mediums, including its own "Agent's Corner" system, which touts the ability to sell "introductions" from interested home sellers across the country to interested real estate agents or investors, again touting that it originates hundreds of thousands of real estate transactions:[5]




30. Through that website, Defendant notes that its leads come from "Homeowners with a high intent to sell *submit an offer request, along with their property and contact information on*

---

4 https://www.gvgcapital.org/jobs (last visited July 1, 2025).

5 https://agentscorner.com/ (last visited July 1, 2025).

*our highly optimized lead generation pages.*"[6]

31. According to Graham Gochneaur, the Founder/CEO of Defendant, Defendant is the "the single largest producer of: Off Market, Motivated, Home Seller Leads in the United States" for the benefit of "Residential Realtors, Real Estate Investors, Fix & Flip Investment Firms, Real Estate Investment Funds, Private Lending Groups, Hard Money Lending Groups, [and] Private Equity Investment Groups."[7]

32. Therefore, upon information and belief, Defendant seeks to solicit consumer "leads" and sell that information to interested realtors and real estate investors as "motivated home seller" leads.

33. The FCC's guidance is particularly illuminating here. Congress charged the FCC with implementing the Federal Do-Not-Call rules. 47 U.S.C. § 227(c)(1). In 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005). In interpreting the definition of "telephone solicitation," the FCC rejected this proposed exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id.* at 3793-94.

34. Defendant, by its own public admission, acts as an intermediary engaged in this very conduct, contacting "off market" property owners seeking to solicit them to engage with

---

6 https://agentscorner.com/#OurLeads (last visited July 1, 2025) (emphasis added).

7 https://www.linkedin.com/in/grahamgochneaur/ (last visited July 1, 2025).

Defendant's partners—and therefore use Defendant's and its partners' services—as a prospective seller.

35. In other words, the FCC has expressly declared that conduct materially similar to Defendant's conduct qualifies as a regulated telephone solicitation which accordingly means that Defendant must adhere to both 1) the DNC Registry; and 2) the requirement that a telemarketer obtain prior express written consent before sending any telemarketing or solicitation messages.

36. Plaintiff did not give Defendant prior express consent or prior express written consent to send text messages to her cellular telephone number.

37. Plaintiff did not give Defendant prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

38. Defendant sent the text messages at issue for non-emergency purposes.

39. Upon information and belief, Defendant sent the text messages at issue voluntarily.

40. The purpose of the text messages at issue was to advertise and to market Defendant's business or services.

41. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance, and because Defendant's text messages frustrated the very purpose for her signing up for the DNC Registry, as she signed up in a specific effort to stop the various text messages she was receiving from senders like (or including) Defendant.

42. Upon information and belief, Defendant knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

**Class Action Allegations**

43. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a

representative of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom GVG Capital, LLC sent, or caused to be sent, more than one telephone call or text message within a 12-month period, promoting GVG Capital, LLC's, or their business partners', goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before GVG Capital, LLC sent, or caused to be sent, at least two of the telephone calls or text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

> All persons and entities throughout the United States (1) to whom GVG Capital, LLC sent, or caused to be sent, more than one telephone call or text message within a 12-month period, promoting GVG Capital, LLC's, or their business partners', goods or services, (2) where the subject calls or text messages did not state the name of the individual caller, the name of GVG Capital, LLC, and a telephone number or address at which GVG Capital, LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

44. Excluded from the Classes are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

45. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

46. The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

47. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

48. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant, and by third parties, including members of the Classes.

49. Plaintiff's claims are typical of the claims of the members of the Classes.

50. As they did for all members of the Federal Do-Not-Call Registry Class, Defendant delivered solicitation telephone calls and text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone numbers with the DNC Registry.

51. As they did for all members of the Sender Identification Class, Defendant delivered solicitation telephone calls and text messages to Plaintiff's telephone number where the subject calls and text messages did not state the name of the individual caller, the name of Defendant, and a telephone number or address at which Defendant may be contacted.

52. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendant.

53. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

54. Plaintiff suffered the same injuries as the members of the Classes.

55. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

56. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

57. Plaintiff will vigorously pursue the claims of the members of the Classes.

58. Plaintiff has retained counsel experienced and competent in class action litigation.

59. Plaintiff's counsel will vigorously pursue this matter.

60. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

61. The questions of law and fact common to the members of the Classes predominate

over questions that may affect individual members of the Classes.

62. Issues of law and fact common to all members of the Classes include:

a. For the Federal Do-Not-Call Registry Class, Defendant's practice of placing telephone calls or sending text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

b. For the Sender Identification Class, Defendant's practice of placing telephone calls or sending text messages, for solicitation purposes, without identifying the name of the individual caller, the name of Defendant, and a telephone number or address at which Defendant may be contacted;

c. Defendant's violations of the TCPA; and

d. The availability of statutory penalties.

63. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

64. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

65. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

66. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

67. These varying adjudications and incompatible standards of conduct, in connection

with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

68. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

69. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

70. There will be no extraordinary difficulty in the management of this action as a class action.

71. Defendant acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

72. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-71.

73. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

74. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

75. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

76. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

77. Defendant violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

78. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-71.

79. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

80. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

81. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

82. Defendant violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

83. Defendant therefore violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendant violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendant from continuing their violative behavior, including continuing to deliver solicitation telephone calls or text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Classes damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: July 1, 2025.

*/s/ Bryan A. Giribaldo*
Bryan A. Giribaldo
Texas Bar No.: 24124547
Alex D. Kruzyk* (to seek admission)
Texas Bar No.: 24117430
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003
bgiribaldo@pkglegal.com
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed classes*